UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

JOYCE ANN JEFFERSON,

    *Plaintiff*,

v.

LANDMARK APARTMENT ASSOCIATES; ROSS FINANCIAL SERVICES, INC.; CRIS BARNETT,

    *Defendants*.

Case No. 1:25-cv-01161-MMM-RLH

**ORDER & OPINION**

    Joyce Ann Jefferson leased an apartment in downtown Peoria. Her unit, one of many federally subsidized units in the area, was owned by Landmark Apartment Associates and managed by Ross Financial Services, Inc. She alleges that employees of Landmark and Ross unlawfully entered her apartment, took her belongings, and fenced them on Facebook Marketplace. When Jefferson reported the theft, the employees allegedly began a campaign to intimidate and harass her, eventually driving her from the property.

    Jefferson then filed this suit. Her original complaint asserted three claims—two under the Fair Housing Act and one for conversion—against Landmark, Ross, and Cris Barnett. She now seeks permission to add six individual defendants who worked for Ross and Landmark and to assert three additional state-law claims. (Doc. 21.) The existing defendants (collectively, "Landmark") oppose the amendment, arguing that it would be futile because the proposed amended complaint fails to state

a plausible claim for relief under Rule 12(b)(6). For the reasons explained below, Jefferson's Motion for Leave to Amend, (Doc. 21), will be granted.

## LEGAL STANDARD

Rule 15 embodies a liberal amendment policy: courts "should freely grant leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 521 (7th Cir. 2015). That said, courts may deny leave when the movant has engaged in undue delay, made the request in bad faith, or repeatedly failed to cure deficiencies, or when the amendment would unduly prejudice the opposing party. *See Bethany Pharmacal Co. v. QVC, Inc.*, 241 F.3d 854, 861 (7th Cir. 2001). An amendment is also unwarranted where it would be futile, meaning it would not survive a motion to dismiss. *See Runnion*, 786 F.3d at 520. That inquiry asks whether the amended complaint states a plausible claim for relief, assuming the allegations are true and the inferences favor the plaintiff. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## DISCUSSION

Jefferson seeks leave to add six defendants and three claims: negligence, a violation of the Illinois Landlord Retaliation Act, and constructive eviction. Landmark opposes Jefferson's request on futility grounds. The Court disagrees. Jefferson's proposed amended complaint alleges enough specific facts to state a plausible claim, so leave to amend will be granted.

First, a procedural wrinkle. Landmark challenges not only Jefferson's proposed amendments but her entire complaint. It argues that all her claims, old and

new, are inadequately pleaded.[1] This is puzzling: Landmark could have raised those arguments in responding to Jefferson's original complaint. The supposed deficiencies were present the moment this case was filed. But Landmark instead filed an answer, (Doc. 7), and by doing so waived the right to file a Rule 12(b) motion, *see* Fed. R. Civ. P. 12(b). Perhaps Landmark's opposition could be construed as a motion for judgment on the pleadings, as courts sometimes do when a defendant raises a 12(b)(6) defense after filing an answer. *See, e.g.*, *Republic Steel Corp. v. Pennsylvania Engineering Corp.*, 785 F.2d 174, 182 (7th Cir. 1986). But Landmark does not request dismissal (or any affirmative relief, for that matter); it simply asks the Court to deny Jefferson's motion to amend. (Doc. 25 at 12.) The effect of such a denial, however, would be to reinstate Jefferson's original complaint as the operative pleading. So it is unclear what Landmark hopes to gain with its sweeping 12(b)(6) challenges.

In any event, the Court will construe Landmark's opposition as just that: an opposition. Landmark challenges each count of the proposed amended complaint as futile, and the Court addresses each argument in turn.

## I.   Counts I and II: Fair Housing Act

Counts I and II both allege Fair Housing Act violations. *See* 42 U.S.C. §§ 3601–3619. Count I alleges racial discrimination "in the terms, conditions, or privileges of the sale or rental of a dwelling" under § 3604(b); Count II alleges disability discrimination under § 3604(c). Both counts also allege unlawful intimidation under

---

[1] The defendants are candid about this. (*See* Doc. 25 at 2 ("Plaintiff's proposed Amended Complaint is deficient as to all Counts and all Defendants, *including those already named*, because it fails to plausibly state *any claim* upon which relief can be granted.")(emphasis added).)

§ 3617. Jefferson's proposed amendment makes only one change to these counts: It adds two paragraphs identifying six people—"Laura Boone, Tiffany Boone, Pozos, Lacock, Hidden, and Cris Barnett"—who allegedly engaged in the discrimination. (Doc. 21-1 at 8, 10.) Landmark argues that Jefferson fails to plead necessary elements of her claim and does not tie specific conduct to specific defendants. The Court is unpersuaded.

### A.    Jefferson's § 3604(b) Discrimination Claim

Section 3604(b) "makes it unlawful to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling . . . because of race." *Bloch v. Frischholz*, 587 F.3d 771, 779 (7th Cir. 2009) (en banc) (quotations omitted). One of those privileges, the Seventh Circuit has recognized, is the right to inhabit the dwelling. *Id.* An infringement on that right may thus violate § 3604(b)—for example, when the plaintiff is constructively evicted from the dwelling or subject to a "hostile housing environment" because of her race. *Wetzel v. Glen St. Andrew Living Community, LLC*, 901 F.3d 856, 861 (7th Cir. 2018).[2]

Landmark argues that no such infringement—and thus no § 3604(b) violation—has been alleged. The futility argument goes like this: In the summer of 2024, Jefferson transferred units and left some property behind; Landmark employees then took that property from her old unit; the lease allowed Landmark to

---

[2] Jefferson's complaint invokes both § 3604 and § 3617, but Landmark conflates the two. Citing § 3604, Landmark maintains that Jefferson must prove that (1) she "is a member of a protected class"; (2) she "was engaged in the exercise or enjoyment of fair housing rights"; and (3) "the defendant coerced, threatened, intimidated, or interfered with those rights because of [her] race or protected activity." (Doc. 25 at 4.) But § 3604 says nothing about coercion, threats, or intimidation—that conduct is proscribed by § 3617.

4

enter the old unit for that purpose; therefore, Jefferson was "not engaged in the exercise or enjoyment of fair housing rights" because she had no rights in the old unit when her property was taken. (*See* Doc. 25 at 5.)

That may be true, but it is beside the point. According to Jefferson's complaint, the theft of her property was only start of a long series of events—including threats, racial slurs, inappropriate comments, and harassment—that culminated in her decision to move out of Landmark's complex entirely. (*See* Doc. 21-1 at 5–6.) She alleges that this conduct created a hostile housing environment, (Doc. 21-1 at 7), and terminated in constructive eviction, (Doc. 21-1 at 10–11). Because either condition, if proven, can support a § 3604(b) violation, Jefferson has stated a plausible claim. Landmark treats the only relevant "privilege" as Jefferson's right occupy her old unit at the time of the theft. But the complaint does not read so narrowly: the theft may have catalyzed the § 3604(b) violations, but it was only the first chapter.

Landmark's causation argument fails for similar reasons. It asserts that Jefferson does not "allege a causal connection between her disability or her race and the removal of her property." (Doc. 25 at 5.) This assumes that the removal of Jefferson's property is the only way to prove her § 3604(b) claim. It is not. If the threats, intimidation, and harassment created a hostile environment or led to constructive eviction, the relevant causal relationship is between the racial animus and the harassing conduct, not the theft.

### B. Lack of Specificity

Landmark also criticizes Jefferson's amended complaint for "group pleading"—that is, the use of vague references to a group of defendants without specifying who did what. *Grieveson v. Anderson*, 538 F.3d 763, 778 (7th Cir. 2008). Because Rule 8 neither allows nor forbids group pleading, the relevant question is whether the complaint provides "sufficient detail to put the defendants on notice of the claims." *Sloan v. Anker Innovations Ltd.*, 711 F. Supp. 3d 946, 955 (N.D. Ill. 2024). A complaint may therefore direct every allegation at all the defendants and still provide adequate notice because, in that case, the defendants "do not have to speculate about which claims or allegations pertain to them; they must defend against them all.'" *Id.*

Landmark suggests that Counts I and II "fail to distinguish between defendants," making it impossible to "determine the claims against them." (Doc. 25 at 6.) But those counts identify exactly who is responsible for the violations: all defendants except Cris Barnett and Melody Barnett. Likewise, Count III (conversion) names Ross, Landmark, Cris Barnett, and Melody Barnett. And Counts IV, V, and VI (state-law claims) name only Ross and Landmark. It is therefore evident which defendants are potentially liable for which claims.

As Landmark sees things, Jefferson should have gone a step further. It argues that Jefferson's failure to identify who sent the harassing text messages, along with the scant references to some of the individual defendants, "prevents Defendnats from ascertaining the claims against them." (Doc. 25 at 6.) But if Jefferson received anonymous texts from people she reasonably believed to be employed by Landmark,

6

she is not required to identify exactly who sent the messages at the pleading stage. That is what discovery is for. Counts I and II make clear that some of the individual defendants were involved—to some degree—in the Fair Housing Act violations. When Jefferson is put to her proof at the dispositive motion stage (or at trial), she will bear the burden of explaining who did what, when they did it, and why. For now, the defendants are on notice of the claims against them. That is all Rule 8 requires. *See Sloan*, 711 F. Supp. 3d at 955.

To Landmark's credit, Jefferson's amended complaint could be more specific. The "Common Facts" section, for example, alleges that the harassing messages were sent by "[e]mployees and agents of Landmark and/or Ross." (Doc. 21-1 at 5.) It also alleges that the anonymous senders "were surveilling her apartment" and "banging on her door." (Doc. 21-1 at 5.) And under Counts I and II, it identifies a group of individuals who participated in the harassment but does not apportion responsibility among them. (*See* Doc. 21-1 at 8, 10.) *See also Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) ("Liability is personal.") While this lack of specificity makes Jefferson's proposed complaint more difficult to parse, it does not warrant denying leave to amend. The question of individual apportionment is better resolved at a later stage, when Jefferson will have an opportunity to defend her complaint and both sides can brief the question directly. *See Clark v. Deere & Co.*, No. 1:22-cv-1405, 2023 WL

2815922, at *2 (C.D. Ill. Apr. 6, 2023) (explaining that futility is "better suited" for 12(b)(6) motions). Landmark may renew its arguments then.[3]

## II.  Count III: Conversion

Landmark argues that Jefferson's conversion claim fails because she lacked "an absolute and unconditional right to possess the property" when it was taken. (Doc. 25 at 7 (citing *In re Thebus*, 483 N.E.2d 1258, 1260 (Ill. 1985).) Because Jefferson had abandoned the property in her old unit, the argument runs, she lacked the necessary possessory interest when Landmark took it. True, Illinois law recognizes conversion only when the plaintiff has "a right to the immediate possession of the object unlawfully held." *Bender v. Consolidated Mink Ranch, Inc.* 441 N.E.2d 1315, 1320 (Ill. App. Ct. 1982). But Landmark assumes that the only relevant timeframe is when the property was first taken.

Under Illinois law, however, conversion can occur when property lawfully acquired is later unjustifiably withheld from its true owner. *See Cirrincione v. Johnson*, 703 N.E.2d 67, 70 (Ill. 1998). Indeed, courts have found conversion under precisely those circumstances. *See, e.g.*, *Kennedy v. Intraspectrum Counseling, Ltd.*, 699 F. Supp. 3d 667, 671 (N.D. Ill. 2023) (applying Illinois law and denying motion to dismiss conversion claim where complaint "adequately allege[d] that [the defendant] failed to return a book that [the plaintiff] owned"). And Jefferson's complaint tracks this legal theory: It claims that she "made a demand for her items from Defendants

---

[3] It goes without saying, but the Court will say it anyway: The granting of Jefferson's motion for leave "should not be read as indicating any view as to the ultimate merits of the claims," the truth of the factual allegations, or the outcome of any other motion. *Duthie v. Matria Healthcare, Inc.*, 254 F.R.D. 90, 93 (N.D. Ill. 2008).

by reporting the theft to the police and to Landmark and Ross." (Doc. 21-1 at 10.) At that point, Jefferson may well have had an absolute right to possess the property. Accordingly, Jefferson's amended complaint states a claim for conversion.

## III. Count IV: Constructive Eviction

The first of Jefferson's three additional state-law claims is constructive eviction. It arises when a landlord has acted (or failed to) "with the intention of depriving the tenant of the enjoyment of the premises." *Shaker & Assocs., Inc. v. Med. Techs. Grp., Ltd.*, 733 N.E.2d 865, 872 (Ill. App. Ct. 2000).

Landmark raises two objections. First, it attacks Jefferson's failure to specify who did what. For the reasons already given, the Court disagrees. *See supra*, Part I.B. Landmark also asserts that Jefferson has omitted facts showing an "intent to deprive." (Doc. 25 at 8.) This asks too much. The relevant intent "need not be an express" one; Illinois courts infer it from the "natural and probable consequences of" the Landlord's conduct. *Shaker*, 733 N.E.2d at 872. For example, an intent to deprive can be found when the landlord fails to supply heat because, naturally, a person would sooner move apartments than contract frostbite. *See id.* And if intent can be inferred from the failure to supply heat, surely it can be inferred from harassment and death threats. (*See* Doc. 21-1 at 5.) *See also Ashcroft*, 556 U.S. at 678 (explaining that plausibility means a "reasonable inference" that the defendant is liable). Jefferson has pleaded enough.

## IV. Count V: Illinois Landlord Retaliation Act

Jefferson's next state-law claim invokes the Illinois Landlord Retaliation Act, a recently-enacted tenant-rights law. *See* 765 ILCS 721/1. The Act forbids landlords

9

from, among other things, "knowingly terminat[ing]" a lease based on the tenant's involvement in a protected activity—for example, complaining of building code violations, joining a union, or exercising "any right or remedy provided by law." 765 ILCS 721/5.[4]

Jefferson's theory is that she engaged in protected activity when she complained of maintenance issues to Landmark management and, later, reported the theft of her property to police. (Doc. 21-1 at 11.) Her constructive eviction was prompted by—and thus in retaliation for—that activity.

Landmark makes two arguments. First, it argues that no allegations in the proposed complaint suggest that Landmark *knowingly* terminated the tenancy because of Jefferson's protected activity. But "knowingly," at least in the criminal context, simply means a conscious awareness that one's conduct is "practically certain to cause" the unlawful result—here, the eviction. *People v. Dorsey*, 66 N.E.3d 914, 921 (Ill App. Ct. 2016). To say Landmark's harassment and intimidation was "practically certain" to drive Jefferson from the property requires no mental gymnastics. As for causation: the complaint alleges that Landmark and its employees knew of the maintenance complaints and the police report. (Doc. 21-1 at 5.) It also alleges that the harassment began sometime after Jefferson made those complaints, which supports an inference that the protected activity prompted the harassment. In any

---

[4] The language of the statute appears to have been lifted from the Chicago Residential Landlord and Tenant Ordinance, which proscribes similar retaliatory activity. *See Dahlman v. Michalak*, 219 N.E.3d 635, 639–40 (Ill. App. Ct. 2022).

case, these unresolved factual questions strike at the merits of Jefferson's claim—not the sufficiency of her complaint.

Second, Landmark insists that Jefferson's tenancy was never "terminated" under the Act because Landmark never "served her with an eviction notice, shut off her power, or changed the locks on her door." (Doc. 25 at 10.) In other words, the Act demands a formal eviction notice or physical dispossession; constructive eviction won't cut it. Maybe so. Tenancies generally terminate upon thirty days' written notice from either party. *See, e.g.*, *See Dahlman*, 219 N.E.3d at 640. But Landmark's interpretation is not the only one. To the contrary, a tenant who has been constructively evicted is legally excused from paying rent and allowed—indeed, *required*—to vacate the property. *John Munic Meat Co. v. H. Gartenberg & Co.*, 366 N.E.2d 617, 623 (Ill. App. Ct. 1977). The core of the landlord-tenant relationship—rent in exchange for possession—would therefore be "terminated" as that word is generally used. In any case, Illinois courts have yet to resolve the question. In fact, only one unpublished case in Illinois even cites the Act. *See BKA Holdings, LLC v. Sam*, No. 25-25-0160, 2025 WL 2652753 (Ill. App. Ct. Sep. 16, 2025). Landmark's argument thus raises complex interpretive issues of first impression for which Rule 15 is not an appropriate battleground. *See supra* Part I.B.

## V.     Count VI: Negligence

Finally, Jefferson alleges that Landmark negligently allowed its employees to run off with her property and sell it on Facebook Marketplace. Landmark argues that these allegations do not establish a legal duty. The Court disagrees.

11

Negligence requires a legal duty, breach, causation, and harm. *Simpkins v. CSX Transp., Inc.*, 965 N.E.2d 1092, 1096 (Ill. 2012). The existence of a duty turns in part on whether the "harm was foreseeable." *Resag v. Wash. Nat'l Ins. Co.*, 414 N.E.2d 107, 109 (Ill. App. Ct. 1980). Landmark asserts, without citation, that it owed no duty "to protect property abandoned" in Jefferson's old apartment. (Doc. 25 at 11–12.) This could mean one of two things.

The first is that Landmark could not reasonably foresee that Jefferson's property would be lost, stolen, or destroyed in the process of cleaning her old unit. Why not? When Landmark's employees took the property, surely mishandling it could foreseeably injure its owner. The second is that Jefferson lost a cognizable interest in the property by leaving it behind. But in Illinois, property is "abandoned" in the legal sense only when "the owner, intending to relinquish all rights to the property, leaves it free to be appropriated by any other person." *Toll Processing Servs., LLC v. Kastalon, Inc.*, 880 F.3d 820, 824 (7th Cir. 2018). Landmark does not argue—nor does the complaint imply—that Jefferson intended to relinquish her property rights. Quite the opposite: she filed a police report upon learning that someone had taken it. Nor was leaving it behind in a private apartment equivalent to placing it on the curb with a cardboard sign saying "Take Me." Thus, Jefferson's has alleged facts to establish a legal duty.

## VI. Discovery

A final housekeeping matter. Shortly after moving to amend, Jefferson asked to modify the discovery schedule. (Doc. 21.) In response, Landmark suggesting that

12

if the amendment is allowed, "a revised Discovery Plan should be established after the additional Defendants have had an opportunity to obtain counsel and" file a response. (Doc. 23 at 4.) The Court concurs. Once the additional defendants have been served, the Court will hold a status conference to establish a new discovery schedule.

## CONCLUSION

IT IS THEREFORE ORDERED that Jefferson's Motion to Amend, (Doc. 21), is GRANTED. Jefferson's Motion for an Extension of Time to Complete Discovery, (Doc. 22), is DENIED with leave to renew after the defendants have been served. The Clerk is DIRECTED to docket, (21-1), as Jefferson's First Amended Complaint.

*So ordered.*

Entered this 23rd day of February 2026.

                                                          s/ Ronald L. Hanna
                                                          Ronald L. Hanna
                                                          United States Magistrate Judge